# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:05-cr-00185** |
| | ) | **Judge Aleta A. Trauger** |
| **TIMOTHY RYAN RICHARDS** | ) | |

## MEMORANDUM AND ORDER

Before the court is defendant Timothy Ryan Richards' *pro se* "Omnibus Motion for Relief under the All Writs Act and Motion Requiring the Federal Bureau of Prisons to Immediately Place Him in a Residential Reentry Center for the Remainder of His Sentence" (hereafter, "First Step Motion") (Doc. No. 411), seeking an order compelling the United States Bureau of Prisons ("BOP") to immediately recalculate his release date based on the First Step Act of 2018 ("FSA"), Pub. L. 115-391, 132 Sta. 5194, as well as an order compelling the BOP to release him immediately into a Residential Reentry Center. Also pending is Richards' Motion to Expedite Ruling on Previously Filed Motion for Relief Under the First Step Act of 2018 ("Motion to Expedite"). (Doc. No. 414.)

The latter motion is granted. However, because the court finds that it does not have the authority to grant the other relief requested, the First Step Motion will be denied without prejudice.

## I.      Background

Following a jury trial in this court, Richards was convicted on charges related to the distribution, production, and advertising of child pornography. (Judgment, Doc. No. 386.) On November 7, 2008, Richards received a below-guideline-range sentence of sixteen years, to be followed by eight years of supervised release. The Sixth Circuit affirmed the conviction and

sentence, *United States v. Richards*, 659 F.3d 527 (6th Cir. 2012), and the Supreme Court denied review*, Richards v. United States*, 566 U.S. 1043 (2012). Richards is currently serving his sentence at FCI Seagoville Low Federal Correctional Institution in Seagoville, Texas. According to Richards, the BOP calculates his release date as August 31, 2019. (Doc. No. 411, at 9.)

Richards filed his First Step Motion on March 15, 2019. He subsequently supplemented his motion in a letter, further explaining the hardships imposed on him as a result of the BOP's failure to update his release date and its denial of his request for placement in a Residential Reentry Center. (Doc. No. 413.) Shortly thereafter, the court entered an order appointing the Federal Public Defender for the purpose of conducting a review to determine whether the movant was entitled to relief under the FSA and directing counsel to file a notice of appearance or supplemental motion within 45 days of the date of that order. (Doc. No. 412.) The order also provided that the government would then have 30 days to respond to the motion.

Richards promptly filed his Motion to Expedite, explaining that the scheduling order meant that the court would not be able to rule on his motion until weeks after he believed he would be due for release under the FSA. In response, the court entered an order modifying the briefing schedule. (Doc. No. 415.) Appointed counsel entered an appearance and filed a Supplemental Brief in support of the First Step Motion the same day. (Doc. Nos. 416, 417.) The government filed its Response, opposing relief (Doc. No. 419), and Richards, through appointed counsel, filed a Reply (Doc. No. 420.)

## II.     The First Step Motion

Richards' motion, which purports to seek relief under the authority granted the federal courts by the All Writs Act, 28 U.S.C. § 1651, asks that the BOP be ordered to "immediately apply the good time credits afforded him" under the FSA, which was signed into law on December 21,

2018. Richards argues that (1) the FSA provision modifying the method by which federal prisoners' good-time credits should be calculated went into effect immediately upon the signing of the FSA; (2) the effect of that modification is to move his release date up from the end of August 2019 to May 11, 2019; and (3) the BOP's failure to implement the FSA immediately violates his Fifth Amendment right to due process and equal protection.

In addition, irrespective of his FSA release date, Richards demands an order directing the BOP to place him immediately into a Residential Reentry Center ("RRC"), prior to his actual release from custody, in order to help prepare him for his eventual release. He states that he successfully completed the 500-hour Residential Drug Abuse Program ("RDAP"), which makes him eligible for early release, but that the BOP has refused to place him in any RRC prior to his release.[1] He relies upon the following statutory provision:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). He details his extensive rehabilitative efforts over his years of incarceration, over and above his completion of the in-prison portion of RDAP. As a result, he argues that the BOP is authorized by statute to allow him to serve up to a year in a community corrections setting. (Doc. No. 411, at 26.)

He explains that, at his present institution, he requested placement in the RRC program. In

---

[1] Under 18 U.S.C. § 3621(e)(2)(B), the BOP is authorized to reduce by up to one year the sentence of any inmate convicted of a non-violent offense who has successfully completed RDAP. *See also* 28 C.F.R. § 550.55(a)(2). However, "[a]s an exercise of the Director's discretion," the BOP by regulation has determined that inmates who have a current felony conviction for "sexual abuse offenses committed upon minors" are not eligible for early release. 28 C.F.R. § 550.55(b)(5)(iv).

October 2017, the prison staff filed the formal request for RRC placement and recommended that such placement take place in a community corrections setting between 271 and 364 days prior to release. Despite this recommendation, the BOP denied Richards' request for placement in a community corrections setting. As a result, he risks being released directly from prison into the community with no transitional assistance from the BOP. He filed a petition for habeas relief challenging the BOP's denial of his request, but his petition was denied. *Richards v. Harmons*, No. 3:17-cv-02591-L-BT (N.D. Tex. Aug. 9, 2018).[2] He now seeks relief in this court, citing 18 U.S.C. § 3553(a), which requires the court to "impose a sentence sufficient, but not greater than necessary" to, among other factors, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *id.* § 3553(a)(2)(D).

The Supplemental Brief filed by counsel adds little to Richards' very thorough *pro se* brief, except that it notes, somewhat tangentially, that the BOP has, to date, denied Richards the right to serve his eight years of supervised release in Vermont rather than in Tennessee and "asks that this

---

[2] In the habeas petition filed in the § 2241 proceeding, Richards explained that "to successfully complete RDAP, inmates must complete a unit-based component (minimum 500 hours, follow-up services, and community transitional drug abuse treatment component ('TDAT')" and that, before even being admitted for participation in the RDAP, the inmate "must be able to complete all three components", including the "critical RRC or home confinement transfer to participate in the TDAT." *Richards v. Harmon*, No. 3:17-cv-02591-L-BT (N.D. Tex. Sept. 25, 2017) (Verified Petition for a Writ of Habeas Corpus) (citing 28 C.F.R. § 550.53; BOP PS 5330.11). He was apparently permitted by the prison to participate in the unit-based RDAP and completed the minimum 500 hours, but was then denied the ability to participate in the TDAT portion of the program. He argued in his habeas petition that the BOP violated the Administrative Procedures Act ("APA") when it disqualified him from eligibility for early release due to his child pornography convictions and that BOP Policy Statement 5162.05 improperly lists his offenses as crimes of violence. The reviewing court dismissed on the grounds that (1) the BOP's decisions were not reviewable under the APA; and (2) the BOP Policy Statement did not create a constitutionally protected liberty interest in receiving a reduced sentence. *Richards v. Harmon*, No. 3:17-cv-02591-L-BT (N.D. Tex. Aug. 9, 2018) (Order adopting Report and Recommendation).

Court take whatever step possible to enable the transfer of his supervision to Vermont." (Doc. No. 417, at 2.)

In response, the government argues that (1) the motion is premature, because the FSA, though enacted, has not yet taken effect; (2) Richards' motion does not implicate due process concerns, because a prisoner has no preexisting right to early release or implementation of a new method for computing his release date; (3) the BOP has exclusive jurisdiction to determine inmate sentence credits, and the exclusive form of relief for challenging the BOP's decision is through filing a habeas petition under 28 U.S.C. § 2241 after exhausting administrative remedies, which Richards has not done; (4) to the extent the motion can be construed as challenging the BOP's refusal to transfer supervised release to Vermont, the court should deny relief.

Richards' Reply further explains the reasons for his request for transfer of his post-release supervision to Vermont and the logistical difficulties imposed by the prospect of imminent release in Nashville, where he has no family and no connections, in light of the BOP's failure to provide a concrete release date and refusal to release him to an RRC. (Doc. No. 420.)

## III. Discussion

### A. The All Writs Act

The All Writs Act, 28 U.S.C. § 1651, simply authorizes the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* § 1651(a). "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). While the All Writs Act "provides the vehicle by which the federal courts may issue writs in exercise of their clearly delineated jurisdiction," it

"does not amount to an independent jurisdictional grant." *Daniels v. United States*, 25 F. App'x 355, 356 (6th Cir. 2002).

The court finds that the All Writs Act does not authorize the exercise of jurisdiction in this case. Rather, the relief sought by the movant is clearly covered by a separate statute, 28 U.S.C. § 2241, which provides a mechanism for prisoners to challenge the manner or execution of their sentence. *See Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012). A post-conviction motion attacking the execution of the sentence under § 2241 must be brought in the district in which the petitioner is incarcerated. *In re Hanserd*, 123 F.3d 922, 925 n.2 (6th Cir. 1997); *Wright v. U.S. Bd. of Parole*, 557 F.2d 74, 77 (6th Cir. 1977). Richards does not challenge his actual sentence but the BOP's method of computing sentence credits, as a result of which the court must construe the present motion as an attack on the execution of his sentence by the BOP. Richards may only seek such relief through a § 2241 habeas petition, and he may only file such a petition in the federal court located in the district in which he is incarcerated. Moreover, he must exhaust all available administrative remedies prior to bringing a § 2241 petition.

In this case, Richards did not file a § 2241 petition in the appropriate district. Even if he had, he does not allege that he exhausted administrative remedies by pursuing administrative review of the computation of his credit within the BOP. The court therefore lacks jurisdiction to provide the requested relief. *Accord United States v. Powell*, No. 5:11-CR-75-JMH-1, 2019 WL 1521972, at *1–2 (E.D. Ky. Apr. 8, 2019)

**B.** **The First Step Act**

Further, even if Richards had exhausted his administrative remedies and filed a proper § 2241 motion, the relief sought is premature.

The FSA was signed on December 21, 2018. It implements certain reforms to the criminal

justice system. One of these was to amend 18 U.S.C. § 3624(b)(1) to change the manner in which federal inmates' good time credits are calculated, specifically by permitting federal inmates to earn up to 54 days of good-conduct time for each year of the sentence imposed (the "good-time fix"), instead of for each year served, effectively abrogating *Barber v. Thomas*, 560 U.S. 474 (2010). The amendment applies to all federal inmates whose sentence exceeds one year, unless their offense was committed before November 1, 1987 (in which case they were sentenced under the old parole regime). The good-time fix is clearly intended to be retroactive, as it applies equally to all inmates, whether they offended "before, on, or after the date of enactment" of the FSA. Pub. L. No. 115-391, § 102(b)(2), 132 Stat. 5194, 5213 (2018).

The FSA, however, also includes a provision establishing its effective date: "The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases [a] risk and needs assessment system. . . ." *Id.* § 102(b)(2), 132 Stat. 5194, 5213. The Attorney General is directed to complete the risk and needs assessment system "[n]ot later than 210 days after the date of enactment" of the statute; that is, no later than July 19, 2019. *Id.* § 101(a), 132 Stat. 5194, 5196. Although Richards argues that the effective-date provision does not apply to the good-time fix, virtually every court in the country confronted with the question has concluded that it does and that, as a result, motions seeking relief under the FSA now are premature. *See, e.g.*, *Pizarro v. White*, No. 1:19-cv-343, 2019 WL 1922437, at *1 (M.D. Pa. April 30, 2019) ("Accordingly, Pizarro's argument that he is entitled to immediate relief [under the FSA] lacks merit, and his request for a recalculation of his good-time credit based upon the amendments is premature."); *Matthews v. Williams*, No. 4:19CV518, 2019 WL 1639776, at *2 (N.D. Ohio Apr. 16, 2019) ("Until [the Attorney General completes and releases the risk and needs assessment system], the BOP lacks authority to exceed the 47 days of good-time credit allowable

by effective law" (citing 18 U.S.C. § 3624(b)(1)); *Greene v. Underwood*, No. 4:19-CV-160-Y, 2019 WL 1531673, at *1 (N.D. Tex. April 9, 2019) (same); *Kornfeld v. Puentes*, No. 1:19-cv-00263-JLT (HC), 2019 WL 1004578, at *3 (E.D. Cal. Mar. 1, 2019) (same); *Schmutzler v. Quintana*, No. 5:19-046-DCR, 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019) (same).[3]

Richards' constitutional argument lacks merit as well. As the United States District Court for the Eastern District of New York has stated,

> [t]he law is clear that inmates are not a suspect class. As to the question of fundamental rights, the good time credit statute merely authorizes the BOP to offer prisoners the benefit of a reduced sentence in exchange for good behavior. *See* 18 U.S.C. § 3624(b). It therefore does not implicate any fundamental right implicitly or explicitly guaranteed by the Constitution. The BOP's policy of calculating good time credits is therefore subject only to rational basis review.

*Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005). Here, Richards challenges the BOP's interpretation of the FSA as giving it until after the Attorney General completes the risk and needs assessment system to implement the good-time fix. That interpretation is clearly rational, given the statute's clear language and in light of the need for some delay in order to put a system into place for recalculating the release dates for thousands of prisoners. The delay in implementation does not implicate Richards' right to due process or equal

---

[3] Richards brings to the court's attention an order issued by the District of Oregon that did grant relief under the FSA. There, the prisoner filed a § 2255 motion in January 2019, challenging the calculation of his release date under the FSA. The government's response argued that the motion should have been filed as a § 2241 motion in the district of confinement and that the movant had not exhausted administrative remedies, as a result of which the court lacked jurisdiction. The government also noted that, even if the motion had been properly filed, the FSA did not go into effect until 210 days after enactment, or sometime in July 2019. The court inexplicably granted relief in a brief order with no analysis, in light of "the Government's failure to address the merits of Defendant's request, and the equities of the situation." *United States v. Walker*, No. 3:19-cr-00298-RRB-1 (D. Or. Feb. 7, 2019). It issued an order directing the BOP to recalculate the defendant's release date "forthwith," using the amended good time provision in the FSA, and to "release Defendant without delay if the recalculation confirms that Defendant's term of imprisonment has expired." *Id.* This case appears to be an anomaly.

protection. *Accord United States v. Navarro*, 800 F.3d 1104, 1110–14 (9th Cir. 2015) (rejecting arguments that the delayed implementation of Guideline Amendments 782 and 788 violated the Due Process and Equal Protection Clauses, because the delay was rationally related to the necessity of providing time for court review, arranging for transition and reentry programs, and allowing affected agencies to prepare for increased workload); *see also Pizarro*, 2019 WL 1922437, at *2 (summarily dismissing § 2241 petition seeking immediate recalculation of good-time credit under the First Step Act and rejecting equal protection and due process claims); *Crittendon v. White*, No. 1:19-CV-669, 2019 WL 1896501, at *2 (M.D. Pa. Apr. 29, 2019) (same).

In sum, the court lacks jurisdiction to grant the requested relief. Even if it had jurisdiction, Richards' claim that the BOP should immediately recalculate his good-time credit under the FSA is premature, and his claim that the delay in implementing the FSA implicates his constitutional rights is without merit.

### C. The Denial of RRC Placement

The government has not addressed Richards' request that the court order his immediate release into an RRC placement. Richards acknowledges that his previous § 2241 petition requesting the same or virtually the same relief from the proper court was denied. He frames his current motion as a request that this court "modify his sentence" under 18 U.S.C. § 3553(a). (Doc. No. 411, at 27.)

Section 3553, however, pertains to initial sentencing decisions. Under 18 U.S.C. § 3621, the BOP is required to take into consideration certain recommendations made by the sentencing court, but, assuming it actually considers the court's initial recommendations, the BOP's exercise of its discretion under § 3624 is virtually unfettered. Its decisions are exempt from challenge under the Administrative Procedures Act ("APA"). *See* 18 U.S.C. § 3625 (titled "Inapplicability of the

Administrative Procedures Act") ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code [the APA], do not apply to the making of any determination, decision, or order under this subchapter."); *accord Schmutzler*, 2019 WL 272294, at *2 ("[T]he BOP's placement decisions, including determinations regarding halfway house and home confinement placement, are expressly insulated from judicial review.").

Moreover, neither the FSA nor the current version of § 3624(c) mandates that the BOP place prisoners in community corrections for any period of time. Section 3624(c) authorizes the BOP to *consider* placing an inmate in a community correctional facility for up to twelve months. *See Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009). But a prisoner is neither entitled to nor guaranteed such placement for any minimum amount of time. Instead, "the decision to place an inmate in pre-release community confinement and/or home confinement is discretionary and will be 'determined on an individual basis' according to the factors in 18 U.S.C. § 3621(b)." *Schmutzler v. Quintana*, No. 5:19-046-DCR, 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019) (quoting *Boals v. Quintana*, No. 5:15-cv-335-JMH, 2015 WL 8665404, at *2 (E.D. Ky. Dec. 11, 2015)). The First Step Act does not alter this rule.

The court also notes that the appropriate method for challenging the denial of RRC placement is through a § 2241 petition brought in the appropriate district after exhaustion of administrative remedies. *See Woodard v. Quintana*, No. 5:15-cv-307-KKC, 2015 WL 7185478, at *5-6 (E.D. Ky. Nov. 13, 2015) (finding that a prisoner could challenge the BOP's denial of an RRC placement under § 2241 if she first exhausts administrative remedies). Richards already attempted that route, without success. *See id.* (noting that such "claims appear almost certain to fail as a matter of law", in light of the enormous discretion granted the BOP under the law). To the extent he brings a duplicative claim now, it is barred by principles of *res judicata*. *See Smith v.*

*Reno*, 3 F. App'x 403 (6th Cir. 2001) (affirming dismissal of § 2241 petition on *res judicata* grounds). If it is not duplicative, the claim is barred because it was not administratively exhausted.[4]

In short, the court has no authority to order the BOP to release Richards immediately into an RRC placement.

### D.      Supervision in Vermont

Finally, the supplement filed by counsel requests that the court take "whatever step possible to enable the transfer of [Richards'] supervision to Vermont." (Doc. No. 417, at 2.) This informal request does not cite to legal authority suggesting that the court has the power to provide any relief in this arena. Moreover, as the government points out, Richards filed a formal request for transfer of supervision in the U.S Probation Office in Vermont, and his challenge to the denial of that request is still pending in the District of Vermont, *In re Timothy Ryan Richards*, Case No. 5:19-mc-15 (D. Vt.). While the court is generally supportive of transfer under the circumstances presented by Richards, because there is no formal motion in this court and because Richards has not provided any legal support for the court to grant it, his request that the court "take steps" to enable the transfer of his supervision to Vermont will be denied.

---

[4] Although Richards does not make this clear, it appears that his current demand for RRC placement is not entirely duplicative of the request for early release as part of the RDAP program that was the subject of his § 2241 petition. In a letter drafted by Richards and submitted by Richards' counsel in support of his Reply brief, Richards states that his "unit team" at the prison also asked for early release for him "after a complete review of [his] individual circumstances." (Doc. No. 420-1, at 2.) He states that he believes this request for early release to a halfway house was denied because "[Tennessee] has a unique law limiting each halfway house to no more than two sex offenders. Since the BOP contracts with only two facilities in the state . . . , that means only four bed spaces are available." (*Id.*) He believes that, in light of the limited resources available, sex offenders who receive a year off their sentence for completion of RDAP are prioritized over sex offenders like him who did not get early release as part of RDAP. (*Id.*) In other words, it appears that his present motion contests the denial of a second request for early release, unrelated to his participation in RDAP. The claim based on the denial of this request, while not necessarily barred by *res judicata*, would still be subject to an exhaustion requirement.

**IV.    Conclusion and Order**

Timothy Richards' Motion to Expedite Ruling on Previously Filed Motion for Relief Under the First Step Act of 2018 (Doc. No. 414) is **GRANTED**.

However, for the reasons set forth herein, his *pro se* "Omnibus Motion for Relief under the All Writs Act and Motion Requiring the Federal Bureau of Prisons to Immediately Place Him in a Residential Reentry Center for the Remainder of His Sentence" (hereafter, "First Step Motion") (Doc. No. 411), as supplemented following appointment of counsel (Doc. No. 417), seeking an order compelling the BOP to immediately apply the good time credits to which he is entitled under the FSA is **DENIED WITHOUT PREJUDICE**. The court lacks jurisdiction to grant the requested relief and, even if the court had jurisdiction, the request is premature because the FSA has not yet gone into effect.

Further, the motion is **DENIED WITHOUT PREJUDICE** insofar as it requests an order compelling the BOP to release Richards immediately into a Residential Reentry Center or to direct the transfer of his supervision to the District of Vermont.

It is so **ORDERED**.

This the 7th day of May, 2019.

_____
ALETA A. TRAUGER
United States District Judge